**UNITED STATES of America,**

v.

**Jimmy Don STEWART, Earle Maurice Parks, Carolyn Sue McCune.**

**Crim. A. No. 2–88–26.**

United States District Court,
N.D. Texas,
Amarillo Division.

June 22, 1989.

James P. Laurence, Asst. U.S. Atty., Amarillo, Tex., for plaintiff.

Donald E. Jackson, Culton, Morgan, Britain & White, Amarillo, Tex., for Jimmy Stewart.

Travis D. Shelton, Shelton & Jones, Lubbock, Tex., for Earle Parks.

James L. Jarrell, Smith, Jarrell & Assoc., Amarillo, Tex., for Carolyn McCune.

ORDER

MARY LOU ROBINSON, District Judge.

Pending before the Court are Motions to Quash and Dismiss Indictments filed by all the Defendants in the above-numbered and entitled cause. The Defendants seek to quash or dismiss the indictment on the ground that it does not allege offenses under federal law in that Bell Helicopter is not an "organization ... that receives benefits in excess of $10,000.00 in any one year pursuant to a Federal Program" for purposes of 18 U.S.C. section 666.

The Defendants' motions raise the question of subject matter jurisdiction. *See Thor v. United States,* 554 F.2d 759, 762 (5th Cir.1977) ("[i]f the indictment ... fail[s] to allege a federal offense, the district court lack[s] the subject matter jurisdiction necessary to try [the defendant] for the actions alleged in the indictment."); *see also* 18 U.S.C. § 3231 (conferring jurisdiction on the district court to try only those offenses against the laws of the United States).

■ The question of subject matter jurisdiction may be raised at any time, and it cannot be waived by the Defendant. *See* Federal Rule of Criminal Procedure 12(b)(2) and *Pon v. United States,* 168 F.2d 373 (1st Cir.1948). If necessary, the Court itself may raise the issue. *Save the Bay, Inc. v. United States Army,* 639 F.2d 1100, 1102 (5th Cir.1981) ("it is incumbent upon federal courts—trial and appellate—to constantly examine the basis for jurisdiction, doing so on our own motion if necessary.").

In considering its jurisdiction over the alleged offense the Court is mindful of the Supreme Court's admonition that acts conferring criminal jurisdiction on the United States courts should not be given a strained or forced construction. *United States v. Bowman,* 260 U.S. 94, 102, 43 S.Ct. 39, 42, 67 L.Ed. 149 (1922).

For the reasons set forth below the Court finds that Bell Helicopter is not an "organization ... that receives benefits in excess of $10,000 in any one year pursuant to a Federal Program" for purposes of 18 U.S.C. section 666. Thus, the Motion to dismiss is granted because the indictment does not allege an offense under federal law and consequently this Court lacks subject matter jurisdiction to try the defendants.

## I. The Indictment

On a motion to dismiss an indictment all well-pleaded facts are taken as true. *United States v. South Florida Asphalt Co.,* 329 F.2d 860 (5th Cir.), *cert. denied,* 379 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d 87 (1964). In the instant case, the alleged facts giving rise to the indictment are simple.

It is alleged that Defendants developed a scheme in which Defendant Stewart would steal tools and helicopter parts from his employer, Bell Helicopter, and sell them to Defendant Parks. Defendant Parks would, from time to time, provide Stewart with a list of tools and parts he wanted. Defendant McCune worked for Defendant Parks and would deliver the list to Stewart. Stewart and Parks also had an agreement whereby Parks would buy anything else Stewart managed to steal from Bell Helicopter.

Defendants are charged with violating federal law under a two count indictment. Count One of the indictment charges all three Defendants with conspiracy under section 371 of title 18 of the United States Code, specifically, defendants are charged with conspiring to violate section 666 of title 18 of the United States Code.

Count Two charges that Defendant Stewart violated section 666 by stealing tools and helicopter parts from Bell Helicopter and that Defendant Parks aided and abetted him in the stealing of the property.

## II. Section 666

Both counts of the indictment are based upon alleged violations of 18 U.S.C. section 666.

That section provides in pertinent part: (a) Whoever, being an agent of an organization, or of a State or local government agency, that receives benefits in excess of $10,000 in any one year period pursuant to a Federal Program involving a grant, a contract, a subsidy, a loan, a guarantee, insurance, or another form of Federal assistance, embezzles, steals, purloins, willfully misapplies, obtains by fraud, or otherwise knowingly without authority converts to his own use or to the use of another, property having a value of $5000 or more owned or under the care, custody, or control of such organization or State or local government agency, shall be imprisoned for not more than ten years and fined not more that $100,000 or an amount equal to twice that which was obtained in violation of

this subsection, whichever is greater, or both so imprisoned and fined.

\*     \*     \*     \*     \*     \*

(d) For purposes of this section—

\*     ',     \*     \*     \*     \*

(2) "organization" means a legal entity, other than a government, established or organized for any purpose, and includes a corporation, company, association, firm, partnership, joint stock company, foundation, institution, trust, society, union, and any other association of persons;[1]

The indictment characterizes Bell Helicopter as a private organization that received benefits in excess of $10,000.00 in a one year period pursuant to a federal program involving contracts for the manufacture and modification of helicopters for the United States.

Defendants dispute this characterization, arguing that Bell Helicopter is a private corporation which acts only as a contractual supplier of various items to the United States Government. They contend that as such it cannot be an "organization ... receiving benefits in excess of $10,000" pursuant to a federal program as required by the statute.

*III. Is Bell Helicopter an "organization ... receiving benefits in excess of $10,000 in any one year pursuant to a Federal Program" for purposes of Section 666?*

■ In order to determine if Bell Helicopter, under the circumstances of this case, is an organization within the meaning of section 666, 18 U.S.C., the Court must first look to the actual language of the statute. *United States v. Little*, 687 F.Supp. 1042 (N.D.Miss.1988).

As set forth, *supra*, the statute does not provide the Court with a detailed understanding as to what type of organization comes within its scope. 'Organization' is defined in the statute but, it cannot be read alone, the entire sentence must be read as a whole. Obviously the statute does not apply to all organizations which have contact with the United States Government. It limits its application to those who 'receive benefits in excess of $10,000 ... pursuant to a Federal Program.' The terms "Federal Program" and "benefits" are not defined. The definition of organization does not assist in understanding those terms as they are used in the statute.

Because the statute cannot be interpreted on its face, the Court must look to the legislative history of the statute in interpreting its provisions. *See id.*

No specific definition of "federal program" is given in the history. It does, however, provide that:

[T]he term "Federal Program involving a grant, a contract, a subsidy, a loan, a guarantee, insurance, or another form of federal assistance" [is to] be construed broadly, consistent with the purpose of this section to protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery. However, the concept is not unlimited. The term 'Federal Program' means that there must exist a specific statutory scheme authorizing the federal assistance in order to promote or achieve certain policy objectives. Thus, not every Federal contract or disbursement of funds would be covered. For example, if a government agency lawfully purchases more that $10,000.00 of equipment from a supplier, it is not the intent of this section to make a theft of $5000.00 or more from the

---

**1.** This section was amended in 1986 and now reads as follows:

(a) Whoever, if the circumstances described in subsection (b) of this section exists—

(1) being an agent of an organization ...,

(A) embezzles, steals, obtains, by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—

(i) is valued at $5000 or more, and

(ii) is owned by, or is under the care, custody, or control of such organization ...,

(b) The circumstances referred to in subsection (a) of this section is that the organization ..., receives in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

supplier a Federal crime. It is, however, the intent to reach thefts and bribery in situations of the types involved in the *Del Toro, Hinton,* and *Mosley* cases cited herein. S.Rep. No. 225, 98th Cong., 2d Sess. 369, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3511.

The legislative history gives specific examples of the type of organizations to which the statute does and does not apply. In particular, the statute was intended to apply to "situations of the types involved in the *Del Toro, Hinton,* and *Mosley* cases". While these situations may not encompass all circumstances in which the statute is applicable, they do provide an insight to the type of organization which Congress was trying to reach.

*United States v. Del Toro*[2] involved a program entitled "Model Cities" which was funded through the United States Department of Housing and Urban Development and administered by a city agency. The United States paid 100% of the cost of Model Cities' program and 80% of its salaries. An official of the city agency administering the program accepted a bribe to lease certain office space; the owner of the office space as well as a middleman between the owner and the city official were convicted under section 201 of title 18, U.S.C. which prohibits the bribing of a federal public official or one acting on behalf of the United States. Del Toro appealed, contending that the section did not apply to him because the official was not a federal public official. The Seventh Circuit agreed, finding that the official bribed was a city employee carrying out a task assigned to him by his supervisor, another city employee.

In *United States v. Hinton*[3] the defendants were the Executive Director and the Housing Rehabilitation Coordinator of a community-based, non-profit corporation called United Neighbors, Inc. (UNI). UNI had entered into a contract with the city of Peoria to administer federal funds awarded to Peoria under a Community Development Block Grant and a Federal Metro Reallocation Grant from the United States Department of Housing and Urban Development. The Community Development Grant was entirely sponsored with federal funds and paid the salaries and costs of UNI. Defendants were convicted under section 201(c)(1) and (2) for soliciting money in exchange for the award of housing rehabilitation contracts. Defendants appealed, contending that they were not public officials and thus had not committed a federal crime under the statute. The Seventh Circuit found they were acting on behalf of the federal government and affirmed the conviction.

*United States v. Mosley*[4] involved a Defendant employed by the State of Illinois Bureau of Employment Security as a CETA Intake and Eligibility Officer. Defendant was convicted under section 201 for taking a bribe as a federal public official. The Court held that the Defendant was a federal public official for purposes of the statute because the Illinois Bureau's cost, including the jobs acquired and the salaries of its employees, were paid by the Federal Government under the CETA program.

The situations in which Congress specifically intended the statute to apply include a city agency administering federal funds, a private organization administering federal funds and a state organization using federal funding to provide assistance. All of these programs involve a charitable distribution of funds; that is, the federal government distributing funds for the purpose of aiding the needy, and receiving no tangible material return for its funds.

The Fifth Circuit, in discussing the scope of 18 U.S.C. § 666, spoke of "the federal government's *assistance* programs." *United States v. Westmoreland,* 841 F.2d 572, 578 (5th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 62, 102 L.Ed.2d 39 (1988)

**2.** 513 F.2d 656 (2d Cir.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975).

**3.** 683 F.2d 195 (7th Cir.1982), *aff'd,* 465 U.S. 482, 104 S.Ct. 1172, 79 L.Ed.2d 458 (1984).

**4.** 659 F.2d 812 (7th Cir.1981).

(emphasis added). Further the statute itself speaks of "benefits" and "another form of federal assistance."

On the other hand, Congress did not intend the statute to apply in a situation of *quid pro quo.*[5] The legislative history provides that "if a government agency lawfully purchases more that $10,000.00 of equipment from a supplier, it is not the intent of this section to make a theft of $5000.00 or more from the supplier a Federal crime." S.Rep. No. 225, 98th Cong., 2d Sess. 370, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3511.

Defendants contend that the above-quoted legislative history precludes the "offense" with which they are charged from being a federal offense. They argue that Bell Helicopter is a supplier from which they allegedly stole equipment, and, therefore, the offense is of the type which is specifically excluded from the purview of section 666.

The government alleges, however, that the contract between the Government and Bell Helicopter is not that of a normal supplier because the contracts are for custom manufactured goods, many which are classified and would be illegal to sell to any other purchaser. Thus, the government contends, the defense contracts should be distinguished from other contracts in which there is nothing unique about the equipment.

The government's argument fails because the statute was not intended to apply in purely commercial transactions. The Court notes that the statute was amended and the amendment became effective in 1986. Subsection (c) of the statute was changed to read as follows:

(c) This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.

The amendment[6] reinforces the interpretation that the section was not meant to apply to commercial transactions. Payment to a business of more than $10,000.00 for administering federal funds in a HUD program are monies paid in consideration for its services and not "benefits" as defined in section 666. *United States v. Webb,* 691 F.Supp. 1164 (N.D.Ill.1988). Likewise monies paid in consideration for goods provided, even if customized, are not benefits within the meaning of the statute.

The Government also contends that the theft of the helicopter parts alleged in the indictment directly add to the Government's contract costs, and therefore this situation is one which Congress was addressing when it said that "the purpose of this section [was] to protect the integrity of the vast sums of money distributed through Federal Programs...."

That argument is not persuasive. Although Congress was seeking "to preserve the integrity of federal funds by assuring the integrity of the organizations or agencies that receive them," it was doing so within certain limits. *See e.g. United States v. Westmoreland,* 841 F.2d 572, 578 (5th Cir.1988) (pointing out the limitations in the statute).

Further the express statutory language does not mention "customized parts" or defense contracting. Congress' intentions are clear from the legislative history. If it

**5.** The only case found in which the organization was in any way similar to the one in this case is *United States v. Sadlier,* 649 F.Supp. 1560 (D.Mass.1986). In *Sadlier* the Chief Respiratory Officer was indicted under section 666 because the hospital he worked for received medicare funds.

However Medicare is closer to the type of program discussed in *Del Toro* and the legislative history of the statute. Essentially the hospital provides services and is compensated but the government does not receive anything in return; that is, there is no *quid pro quo* exchange as there seems to be between Bell and the United States.

**6.** The offenses alleged occurred before the amendment took effect in November, 1986; however, the amendment does reinforce the interpretation that purely commercial transactions are not covered.

Further, the amendments to the statute are merely technical. See *Westmoreland,* 841 F.2d at 577; *see also United States v. Smith,* 659 F.Supp. 833, 834 n. 1 (S.D.Miss.1987) ("The amendment altered the format of the statute but made no changes in the intent of the statute.").

had intended to reach defense contracting, it could have easily included it within the statute or made reference to it in the legislative history. Even though it may be desirable to include the type of offense alleged under this section, it does not fall within the scope of the statute. It is not up to the Court to stretch the statute to encompass this offense. *See United States v. Bowman,* 260 U.S. 94, 102, 43 S.Ct. 39, 42, 67 L.Ed. 149 (1922). The enactment of new criminal statutes or the amendment of the same is a prerogative reserved for the legislature.

*IV. Conclusion*

Bell Helicopter is not an organization that receives benefits in excess of $10,000 in any one year pursuant to a Federal Program. Therefore, the Motions to Dismiss the Indictment are granted.

In granting these motions, the Court holds that the conduct of the Defendants did not violate the particular statutes under which they were charged. Whether or not The Defendants' conduct violated other federal or state laws is not before this Court.

It is SO ORDERED.