UNITED STATES of America,
Plaintiff–Appellee,

v.

Stephen NICHOLS, Defendant–Appellant.

No. 93–50619.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 8, 1994.

Decided Nov. 15, 1994.

Brian A. Sun and Ellyn Garofalo, O'Neill, Lysaght & Sun, Santa Monica, CA, for defendant-appellant.

Barbara M. Scheper, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: D.W. NELSON, BEEZER and KOZINSKI, Circuit Judges.

PER CURIAM.

Nichols and other deputies of the Los Angeles County Sheriff's Department ("LASD") stole nearly $3 million of confiscated drug money. Nichols was charged with a number of crimes, among them violating 18 U.S.C. § 666, which makes it a federal offense in certain circumstances to steal from organizations that receive federal funding. Nichols unsuccessfully moved to dismiss the section 666 charge, and then pled guilty to a number of counts, conditioned on his right to appeal the denial of his motion to dismiss the 666. Nichols contends mainly that the government failed to establish that the LASD received in excess of $10,000 in "benefits" in any one year from a "Federal program," as required by 18 U.S.C. § 666(b).[1] We review de novo. *United States v. Ripinsky,* 20 F.3d 359, 361 (9th Cir.1994).

1. Nichols first points to § 666(c), which excludes local agencies that receive federal funds only as "bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business." Nichols would have us extrapolate from this language a rule that the statute covers only agencies that receive gifts or charitable distributions from the federal government, and excludes all agencies that provide the federal government with some form of quid pro quo. This argument does not square with the remainder of § 666, which expressly *does* cover organizations receiving "benefits ... under a Federal program involving a ... contract ... [or] loan." 18 U.S.C. § 666(b). As a party to a contract, the federal government presumably gets something in return for its consideration, and a loan is not typically a gift or charitable contribution. *See United States v. Rooney,* 986 F.2d 31, 34 (2d Cir.1993) (loan constitutes a benefit under § 666(b)).

Rather than excluding all quid pro quo arrangements, § 666(c) speaks in terms of payments received "in the usual course of business." The sharing of forfeited narcotics assets is not a usual business transaction—far from it. Whether and to what extent to provide money from the forfeiture fund is a discretionary decision; 21 U.S.C. § 881(e)(1)(A) says only that the Attorney General *may* transfer funds to a state or local law enforcement agency that participated in the seizure of property. She may instead decide to turn the property over to the GSA, retain it for the DEA, or give it to a foreign government that cooperated in the seizure. 21 U.S.C. § 881(e)(1)(C)–(E). Should she choose to distribute the money to local law enforcement agencies, she is required to divvy up the funds roughly in proportion to the amount each agency contributed to the effort. *Id.* § 881(e)(3)(A). But that doesn't make asset sharing into the equivalent of, say, buying helicopter parts. *See United States v. Stewart,* 727 F.Supp. 1068, 1072–73 (N.D.Tex.1989). In fact, the Attorney General may not make a payment solely to reimburse the agency for past efforts; she must also encourage future cooperation from that agency. 21 U.S.C. § 881(e)(3)(B). The federal government's sharing of seized narcotics assets is therefore

---

1. Construed as a challenge to the sufficiency of the indictment, Nichols' claim fails. The indictment's conclusory allegation is sufficient on its face because it closely follows the language of the applicable statute and alleges each of the requisite elements of the charged offense. *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *United States v. Broncheau,* 597 F.2d 1260, 1262 (9th Cir.1979).

a benefit arising from a federal program designed to encourage cooperation in drug investigations; as a recipient of such funds, the LASD is an agency covered by § 666(b).

■ 2. Nichols claims for the first time on appeal that he didn't steal from the LASD, as required for conviction under § 666(a)(1)(A), because at the time he seized the money it was already the property of the federal government by virtue of 21 U.S.C. § 881(h).[2] Even if this argument were properly raised by Nichols, it would be unavailing. Section 666 requires only that the funds be "under the care, custody, or control" of the LASD. 18 U.S.C. § 666(a)(1)(A)(ii). Once it was seized, the cash was in the custody of the LASD, even if it was owned by the United States.

■ 3. Nichols claims the statute doesn't apply to him because he didn't have control over the disbursement of federal funds. *See United States v. Westmoreland,* 841 F.2d 572, 578 (5th Cir.1988) ("statute limits its reach to ... agents who have the authority to effect significant transactions") (dicta). But 666 outlaws theft by any "agent," including an "employee." 18 U.S.C. § 666(d)(1). Nichols was an LASD employee, charged with the responsibility of recovering and maintaining custody over forfeitable currency and property, and thus the statute covers his actions.

■ 4. Finally, Nichols claims § 666 is unconstitutionally vague because federal forfeiture money can be seen both as federal assistance and as reimbursement for services. But the statute describes the offense with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

**AFFIRMED.**

2. 21 U.S.C. § 881(h) provides, "All right, title, and interest in [confiscated drug proceeds] shall vest in the United States upon commission of the act giving rise to forfeiture under this section."