139 F.3d 908
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Macario DURAN, Defendant-Appellant.
 No. 95-50323.
 United States Court of Appeals, Ninth Circuit.
 Feb. 13, 1998.
Submitted February 3, 1998**
 
 Appeal from the United States District Court for the Central District of California Laughlin E. Waters, District Judge, Presiding.
 Before PREGERSON, HALL, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Macario Duran, a former Los Angeles County Deputy Sheriff, appeals his conviction on five counts stemming from the theft of money from currency seizures while he was a member of Major Violators 3, an elite narcotics enforcement team. Duran appeals his conviction and sentence on one count of conspiracy to steal government property valued at $5,000, in violation of 18 U.S.C. 371. He also appeals his conviction on three counts of theft, in violation of 18 U.S.C. § 666. Duran does not appeal his conviction on one count of money laundering, in violation of 18 U.S.C. § 1957.
 
 
 3
 The district court had jurisdiction pursuant to 28 U.S.C. § 3231. This court has jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part and reverse and remand in part.
 
 
 4
 * Duran first argues that his conviction for conspiracy should be reversed because there is insufficient evidence that he entered into an agreement with other Majors 3 deputies to commit the thefts.
 
 
 5
 There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Ross, 123 F.3d 1181, 1183 (9th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 733, 139 L.Ed.2d 670 (1998) (No. 97-6990). The government is entitled to all reasonable inferences that may be drawn from the evidence. United States v. Vaughn, 797 F.2d 1485, 1489 (9th Cir.1986).
 
 
 6
 The essential elements of a conspiracy are: (1) an agreement to accomplish an illegal objective; (2) the commission of an overt act in furtherance of the conspiracy; and (3) the requisite intent necessary to commit the underlying offense. United States v. Thomas, 887 F.2d 1341, 1347 (9th Cir.1989). While an agreement to accomplish an illegal objective is an essential element of conspiracy, the agreement need not be formal or explicit. United States v. Melchor-Lopez, 627 F.2d 886, 891 (9th Cir.1980). Instead, the agreement may be inferred from the acts of the parties and other circumstantial evidence. Id.
 
 
 7
 Viewing the evidence in the light most favorable to the government, there is more than sufficient evidence for a rational trier of fact to find an agreement. While there is no evidence of an explicit agreement among the Majors 3 members, the evidence clearly shows an implicit agreement among Duran, Miller, Hurtado, Clark, Rapisarda, and Horeczky to cooperate in the stealing and sharing of seized currency. Over a two-year period, all the members of Majors 3 were involved in a regular pattern of stealing money following LASD seizures and dividing it among themselves. While not every deputy participated in, or received proceeds from, every theft, each one willingly participated on a regular basis.
 
 
 8
 Duran was directly involved in the conspiracy's activities. On several occasions, he participated in joint thefts with deputies Rapisarda and Hurtado. On other occasions, he stole money and later shared it with the Majors 3 deputies. He also received a portion of the proceeds from thefts committed by other deputies.
 
 
 9
 In the aggregate, this evidence demonstrates much more than the independent acts of the deputies. It shows an implicit agreement among the Majors 3 deputies, including Duran, to commit thefts, split proceeds, and conceal their activities. Therefore, we hold that sufficient evidence supports Duran's conviction for conspiracy.
 
 II
 
 10
 Duran was convicted of one count of conspiracy to violate, and three counts for substantive violations of, 18 U.S.C. § 666. Under § 666(a)(1)(A)(ii), the stolen property must be "owned by, or [ ] under the care, custody, or control of such organization, government, or agency." Duran contends that the evidence is insufficient to support his conviction on these counts. He argues that the money was stolen before it was processed at Majors 3 headquarters; therefore, the money was not under the care, custody, or control of the LASD at the time it was stolen.
 
 
 11
 Under United States v. Nichols, 40 F.3d 999, 1001 (9th Cir.1994), once money is seized by the LASD, it is in custody of the LASD. Viewing the evidence in the light most favorable to the government, Ross, 123 F.3d at 1183, a reasonable juror could find that the thefts occurred after the money was seized by the LASD and therefore, that it was in the custody of the LASD when it was stolen. In the seventeen cases of theft, the Majors 3 deputies, acting in their official capacities as deputies of the LASD, seized cash from drug dealers or drug buyers during the course of official narcotics investigations. Following these seizures, the deputies would typically steal a portion of the cash, divide it among themselves, and then book the remainder of the cash into evidence.
 
 
 12
 Specifically, Duran was convicted of theft in three cases--the Alberto Caro, Lenoir, and Fuentes cases. In all three of these cases, Duran was acting in his official capacity as a Majors 3 deputy when the currency was seized. It was only following the seizure that Duran stole the money for himself and the other deputies.
 
 
 13
 A reasonable juror could find that the Majors 3 deputies committed the thefts following official LASD seizures; therefore, the money was in the care, custody, or control of the LASD at the time of the thefts and the requirement of 18 U.S.C. § 666(a)(1)(A)(ii) was satisfied. Id.
 
 III
 
 14
 Duran challenges his conspiracy and theft convictions on the basis that on numerous occasions the district court improperly admitted hearsay statements as coconspirator statements under Federal Rule of Evidence 801(d)(2)(E).
 
 
 15
 * Duran argues that there was no conspiracy which included Duran in existence at the time the statements were made. "[P]rior to the final admission of out-of-court statements of co-conspirators against a criminal defendant to the fact finder, the government must establish by a preponderance of the evidence that a conspiracy existed and that the defendant was connected to it." United States v. Zavala-Serra, 853 F.2d 1512, 1514 (9th Cir.1988) (citing Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)). In making this determination, the district court may consider the out-of-court statements so long as the government also introduces evidence in addition to the proposed statements. Id. The district court's finding must be upheld unless clearly erroneous. Zavala-Serra, 853 F.2d at 1514.
 
 
 16
 The evidence proffered at trial was more than sufficient to support the district court's determination that the government had satisfied its burden of establishing a conspiracy between Duran and the declarants. In addition to the out-of-court statements, Clark, Horeczky, Hurtado, and Rapisarda gave extensive testimony describing seventeen different thefts committed by Majors 3 deputies, and the division of proceeds that frequently occurred from 1987-1989. Furthermore, Duran's membership in the conspiracy was also well documented by evidence that he was directly involved in several of the thefts and regularly shared theft proceeds with the Majors 3 deputies. The trial court's finding that the government proved the existence of the conspiracy by a preponderance of the evidence was not clearly erroneous.
 
 B
 
 17
 Duran also argues that the admitted statements were not made during the course of and in furtherance of the conspiracy. Under Federal Rule of Evidence 801(d)(2)(E), a statement offered against a party is not hearsay if made by "a coconspirator of [that] party during the course and in furtherance of the conspiracy." A trial court's decision that the statements fall within the coconspirator hearsay exception must be upheld unless clearly erroneous. United States v. Andersson, 813 F.2d 1450, 1456 (9th Cir.1987). "Under the clearly erroneous standard of review an appellate court must accept the lower court's findings unless the appellate court is left with the definite and firm conviction that a mistake has been committed." United States v. Yarbrough, 852 F.2d 1522, 1535 (9th Cir.1988).
 
 
 18
 "Mere conversations between coconspirators, or merely narrative declarations among them, are not made 'in furtherance' of a conspiracy." Id. at 1535. However, several other types of statements have been found to be in furtherance of a conspiracy including:
 
 
 19
 statements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities.
 
 
 20
 United States v. Nazemian, 948 F.2d 522, 529 (9th Cir.1991).
 
 
 21
 The district court's decision to admit the statements was not clearly erroneous. All of the admitted statements could reasonably be construed as being made during the course of and in furtherance of the conspiracy. The coconspirators' statements furthered the ongoing conspiracy by keeping the coconspirator's abreast of the conspiracy's recent theft activities, see United States v. Eaglin, 571 F.2d 1069, 1083 (9th Cir.1977), prompting further actions by the coconspirators, including stealing, dividing, transferring, and concealing the money, see Yarbrough, 852 F.2d at 1535, and reassuring the coconspirators of the conspiracy's continued existence. See United States v. Mason, 658 F.2d 1263, 1270 (9th Cir.1981). Therefore, the statements were properly admitted under Federal Rule of Evidence 801(d)(2)(E) as coconspirator statements made during the course of and in furtherance of the conspiracy.
 
 IV
 
 22
 Duran argues, and government concedes, that Duran's sentence on count one, the conspiracy count, exceeded the statutory maximum. We review the legality of a sentence de novo. United States v. Guzman-Bruno, 27 F.3d 420, 423 (9th Cir.1994).
 
 
 23
 The statutory maximum for a conviction of conspiracy in violation of 18 U.S.C. § 371 is five years (sixty months). The court below erroneously imposed a sentence of seventy-three months on count one. Although Duran failed to object to the sentence before the district court, the sentence was plain error. Id. Therefore, the panel vacates this portion of the sentence and remands to the district court for the purpose of setting the sentence at sixty months.
 
 
 24
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 **
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir. R. 34-4